UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NILRATAN JAVERY,

        Plaintiff,                    Case No. 2:09-cv-00008
                                            JUDGE GREGORY L. FROST
    v.                               Magistrate Judge E.A. Preston Deavers

LUCENT TECHNOLOGIES INC.
LONG-TERM DISABILITY PLAN FOR
MANAGEMENT OR LBA EMPLOYEES,

        Defendant.

**OPINION AND ORDER**

In this ERISA action, Plaintiff, Nilratan Javery, appeals from the denial of his application for long-term disability benefits under a plan administered by Defendant, Lucent Technologies Inc. Long Term Disability Plan for Management or LBA Employees ("Lucent"). The parties have filed cross-motions for judgment on the administrative record (ECF Nos. 33, 34), as well as memoranda in opposition (ECF Nos. 37, 38). For the reasons that follow, the Court **DENIES** Lucent's motion (ECF No. 33), **DENIES** Javery's motion (ECF No. 34), and **REMANDS** the claim.

**I.  Background**

Plaintiff, Nilratan Javery, previously worked as an employee of Lucent Technologies Inc. from 1998 until May 19, 2005. By virtue of that employment, Plaintiff was covered by Defendant, Lucent Technologies Inc. Long Term Disability Plan for Management or LBA

Employees, a welfare benefit plan under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA").

Javery began experiencing back pain in November 2002, and by May 19, 2005, he could no longer work due to the pain. He applied for and received short-term disability benefits, which expired on November 25, 2005. Javery then unsuccessfully applied for long-term disability benefits, and his two appeals of that denial proved equally unsuccessful. On January 7, 2009, Javery filed the instant action. His Complaint asserts an ERISA claim for benefits under 29 U.S.C. § 1132(a)(1)(B). The parties have completed briefing on cross-motions for judgment on the administrative record, and these motions are ripe for disposition.[1]

## II. Discussion

The statute under which Javery proceeds, 29 U.S.C. § 1132(a)(1)(B), "gives a participant the right to bring a civil action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Creech v. Unum Life Ins. Co. of N. Am.*, 162 F. App'x 445, 448 (6th Cir. 2006). The parties' briefing on the § 1132(a)(1)(B) claim presents three core issues requiring disposition.[2] First, the Court must determine what standard of review applies to the decision to

---

[1] All pinpoint references to documents filed on the electronic docket shall be to the original page numbers of the document involved, not to the page number assigned by the electronic filing system.

[2] The briefing also presents a fourth but more tangential issue that necessitates little extended discussion. Lucent argues in its briefing that the doctrine of judicial estoppel bars this action. To support this previously asserted contention, Lucent directs this Court to what it describes as "new case law relevant to the issue recently . . . issued by a federal appeals court." (ECF No. 33-1, at 17.) The case upon which Lucent relies is *Reed v. City of Arlington*, No. 08-11098, 620 F.3d 477 (5th Cir. 2010). Because the facts and equities involved in *Reed* bear little

deny Javery disability benefits.  Second, the Court must ascertain the scope of Javery's unsuccessful application.  Third, having determined the nature of the application and of the denial, the Court must apply the correct standard of review to the merits.

### A. Standard of Review

It is well settled that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Kalish v. Liberty Mut./Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 505-06 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  *See also Calvert v. Firstar Finance. Inc.*, 409 F.3d 286, 291-92 (6th Cir. 2005).  If the Plan provides the administrator with discretion, then "the highly deferential arbitrary and capricious standard of review is appropriate."  *Borda v. Hardy, Lewis, Pollard, & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998).  *See also Calvert*, 409 F.3d at 291-92.

Determining which standard applies therefore necessitates examination of the Plan.  Section 2.1 of the Plan provides that "[t]he term 'Claims Administrator' shall mean the administrator identified in Section 9.1 of the Plan who has the authority to evaluate disabilities,

---

resemblance to the circumstances of the case *sub judice*, *Reed* carries little persuasive quality here.  Additionally, subsequent to the close of briefing in the instant case, the Fifth Circuit voted for an *en banc* rehearing of the *Reed* panel decision.  *Reed v. City of Arlington*, No. 08-11098, 2011 WL 651889 (5th Cir. Feb. 22, 2011).  In the Fifth Circuit, "[u]nless otherwise expressly provided, the granting of a rehearing en banc vacates the panel opinion and judgment of the court and stays the mandate."  5th Cir. R. 41.3.  The opinion upon which Lucent relies is therefore of no effect and does not salvage Lucent's judicial estoppel argument.  As Javery correctly points out, this Court has previously considered and rejected the proposition that judicial estoppel proves dispositive in this action.  (ECF No. 14, at 4-7.)  The Court incorporates by reference that prior analysis and again rejects Lucent's judicial estoppel argument.

resolve claims and appeals and administer the Plan on behalf of the Company, as provided herein." (ECF No. 36-1, at 5.) Section 9.1 in turn provides that "[t]he Claims Administrator for the Plan is Connecticut General Life Insurance Company (CIGNA" and that "CIGNA has contracted to provide administrative services only in connection with this Plan on behalf of Lucent Technologies Inc." (ECF No. 36-1, at 16.) Section 9.2 then explains that "[t]he Plan Administrator for the Lucent Technologies Inc. Long Term Disability Plan for Management or LBA Employees is Lucent Technologies Inc." and that this entity "shall be the 'named fiduciary' with the authority to control and manage the operation and administration under the Plan in accordance with Section 402(c) of ERISA." (ECF No. 36-1, at 16.)

Citing Sections 2.1 and 9.1, Lucent posits that the arbitrary and capricious standard applies because these sections give CIGNA as the identified administrator delegated authority over the plan. Javery in turn argues that *de novo* review is appropriate because there is no clear grant of discretion to CIGNA. He directs this Court to the plan's use of "the BCAC," an entity not defined in the plan, which makes the initial decision and makes any decision on appeal. *See* ECF No. 36-1, at 18 ("An appeal of a denied claim must be filed in writing within 180 days after the Eligible Employee's receipt of notification of the BCAC's decision . . . .") & 19 (describing how the BCAC shall decide any appeal). Javery specifically highlights for this Court the plan's provision that

> [t]he BCAC shall serve as the final review committee under the Plan and shall have sole and complete discretionary authority to determine conclusively for all parties, in accordance with the terms of the documents or instruments governing the Plan, any and all questions arising from administration of the Plan and interpretation of all Plan provisions, determination of all questions relating to participation of Eligible Employees and eligibility for benefits, determination of all relevant facts, the amount and type of benefits payable to any Eligible Employee,

>lawful spouse or beneficiary, and construction of all terms of the Plan.  The BCAC shall use appeals procedures that comply with the requirements of ERISA.

(ECF NO. 36-1, at 18.)  In light of this provision, Javery explains, there is no clear delegation of discretion to CIGNA, but CIGNA nonetheless made the decision to deny his disability claim.

This Court agrees that the plan does not unambiguously grant discretionary authority to CIGNA.  The Sixth Circuit has explained that, in determining what standard applies, a court should remain cognizant that a plan is not required to use certain magic words to create discretionary authority for a plan administrator in administering the plan.  *Johnson v. Eaton Corp.*, 970 F.2d 1569, 1572 at n.2 (6th Cir. 1992).  What is required is "a clear grant of discretion [to the administrator]."  *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994), *cert. denied*, 513 U.S. 1058 (1994).  The references to the BCAC introduce ambiguity if not outright misleading conflict into the otherwise clear Sections 2.1 and 9.1, ultimately rendering the grant of discretion less than clear.  The briefing informs this Court that "the BCAC" means "Benefits Claims Administrator Committee," but the plan itself curiously does not impart this necessary and critical information.  Absent clarification of the acronym usage in the plan, it would be disingenuous to conclude that the plan on its face is anything but unclear.  It is only through the briefing that the gaps in the plan gain content so that the plan's apparently intended but undeniably unexpressed delegation scheme becomes apparent.

The Court recognizes that at least one other judicial officer has read the relevant provisions differently.  In *Zoller v. INA Life Insurance Company of New York*, No. 06 Civ. 112(RJS), 2008 WL 3927462 (S.D.N.Y. Aug. 25, 2008), a federal district judge analyzed identical plan provisions.  That judge credited the Sections 2.1 and 9.1 as clear by ignoring the

effect on the plan of the BCAC references because they were scrivener's errors. This credit-the-clear-and-ignore-the-unclear approach was joined by additional reasons for the holding, described by the judge in part as follows:

> Moreover, in regard to the references to "BCAC" in the LTD Plan, the Court finds that, even construing the evidence in the light most favorable to plaintiff, the references are clearly typographical errors that do not effect the standard of review applied by this Court. Indeed, based on the record before the Court, no reasonable fact finder could conclude that, during the course of events underlying this litigation, plaintiff believed that anyone other than CIGNA served as the Claims Administrator, and plaintiff has failed to assert any arguments to that effect.
>
> In any event, even assuming *arguendo* that the BCAC references did create some confusion as to the *identity*of the Claims Administrator, the portions of the LTD Plan containing such references served to reinforce the ample grants of discretion to the Claims Administrator that were found elsewhere in the document.

*Id.* at *12. What undercuts this pragmatic analysis is that the test is not what a plaintiff believed, but whether the plan on its face presents a clear delegation. The test is also not whether there are more clear provisions in a plan than unclear, but whether the plan effectively communicates its delegation. And the test is not whether one entity actually and even unquestionably performed all responsibilities under the plan, but rather whether the plan clearly gave that entity the delegated, discretionary authority to do so.

The plan here does not meet the mandated test. Ignoring the unexplained use of an acronym because everyone recognizes what was intended overlooks what was actually accomplished by the wording used in the plan. No one knows what BCAC means based on the plan, and as a result, the plan appears to tell its reader that one entity is in charge and then introduce another mysterious entity as actually in charge. If the plan first named CIGNA as in charge and then provided that *Taco Bell® shall serve as the final review committee under the*

*Plan and shall have sole and complete discretionary authority to determine conclusively for all parties, in accordance with the terms of the documents or instruments governing the Plan, any and all questions arising from administration of the Plan and interpretation of all Plan provisions*, no one would argue that the plan lacked on its face coherence and presented a wholly unclear delegation scheme.  Substituting in the unexplained-in-the-document BCAC acronym and calling it close enough for judicial analysis is little better.  The plan says what it says, and what it says does not make any sense within the context of its four corners.  The BCAC references undercut the otherwise clear delegation sections, and there is no basis under the mandated analysis focusing on clarity to conclude that Lucent should benefit from its lack of attention to detail and lack of clarity by letting it now invoke the more stringent standard of review.  Accordingly, this Court shall conduct a *de novo* review of the denial of Javery's benefits application and appeals.

### B.  Scope of Disability Application and Decision

The next dispute necessitating resolution presents the question of what is properly before this Court.  Lucent argues that only Javery's asserted degenerative back condition is at issue and that any alleged mental condition or confusion cannot inform his ERISA claim.  Lucent explains that Javery did not introduce his mental status as a basis for his disability application until his second appeal, when the record and analysis had previously focused on disc disease and not cognitive impairment related to the consumption of various medications or a psychological condition.  Javery in turn argues that his mental status has been at issue since the inception of his long-term disability application.

In his application for long-term disability benefits, Javery described the grounds for his

claimed disability as follows:

> I have a degenerative back which has been badly affected by sitting long hours at work. Instead of improving, the pain is getting worst [*sic*] with time. Now it is so severe that I feel like I have a nail stuck in my back and I am always unfocused. I take several medications, which makes me even less alert. When I sit to do any work, I get shooting back pain which stops me from doing any quality work.

(ECF No. 36-4, at 496, 512.) Javery also indicated:

> As per Doctor at work I have suffered severe aggravation to my degenerative diseased disc at L4-L5 and L5-S1. This degeneration is progressing and causing increased pain. So much so that I am unable to sit and perform basic physical and mental activities due to extreme back pain. Medications and intense back pain prevents [*sic*] me physically and mentally to continue performing timely and quality work.

(ECF No. 36-4, at 519.) The initial February 17, 2006 denial and the subsequent June 7, 2006 denial on appeal both focused on the degenerative back condition.

In an August 28, 2006 letter, former counsel for Javery sent Lisa Lyle, CIGNA's Appeals Claim Manager, a report by clinical psychologist Dr. David Weaver that counsel characterized as finding that Javery was "markedly impaired in dealing with his co-workers and in his ability to withstand the stress and pressure of day to day work activity." (ECF No. 36-2, at 171.) According to the letter, Weaver evaluated Javery "in connection with his psychological disability for his Social Security claim." (*Id.*) The letter also stated that "[a]t this time, we are asking you to re-open your decision on Mr. Javery to consider his psychological disabilities." (*Id.*) Additional information accompanied the letter and report.

In a January 4, 2007 letter to Javery's former counsel, CIGNA Appeals Claim Manager Dave Betush wrote that CIGNA had "reviewed [Javery's] claim as requested in your Notice of

8

Appeal and must deny his entitlement to benefits." (ECF No. 36-1, at 76.) The letter specifically indicated that CIGNA had considered the Weaver report and other psychological-related information that Javery had submitted. (ECF No. 36-1, at 77.) Notably, however, Betush also stated:

> To ensure an accurate interpretation of the medical information on file, Mr. Javery's claim including information previously on file and information submitted for appeal was reviewed by a Medical Director.
>
> Following the medical review, our Medical Director noted that Mr. Javery has had complaints of back pain. The cervical, thoracic, and lumbar x-rays from April of 2005 were negative. The examination dated June 15, 2005 with Dr. Seymour revealed that Mr. Javery was uncomfortable with standing and sitting, but he had normal gait and station. The lumbar stability program report dated July of 2005 found that Mr. Javery had functional capacity in the sedentary to light duty classification of physical demand. The Independent Medical Examination dated July 21, 2005 from Dr. Skletsky found no support for the restriction of no work. The MRI of the thoracic spine dated August 8, 2005 revealed no significant pathology. The MRI of the lumbar spine dated August 8, 2005 revealed that Mr. Javery had degenerative changes, but there was no herniation noted.
>
> The letter dated May 25, 2006 from Dr. Seymour stated that Mr. Javery had back pain, but was better with rest. The November 22, 2005 note from Seymour advised Mr. Javery to return to work. On a Physical Abilities Assessment form dated January 17, 2006, Dr. Holtzmeier noted sedentary functional capacity.
>
> Our Medical Director concluded that the medical information reviewed did not establish a functional impairment to support the restriction of no work.
>
> Based on the review of the claim for Mr. Javery's appeal, it has been determined that there was no medical evidence to support his inability to perform his occupation as a Software Engineer. As a result, our decision to deny his Long Term Disability Benefits remains unchanged, and no benefits are payable at this time.

(ECF No. 36-1, at 77.) Three points arise from such review of this administrative record.

First, it is beyond question that Javery's mental status was a part of his disability claim.

Second, whether because it had to or because it agreed to, CIGNA/the plan considered Javery's mental status. Third, CIGNA/the plan inexplicably failed to present any reasoning or make any findings on the mental status component of Javery's claim.

Even if not *required* to consider Javery's mental status as possible grounds for a finding of his being disabled, CIGNA nonetheless *agreed* to consider his appeal based on the mental evaluation information. The record is replete with evidence that Javery's mental status was in fact at issue in his claim.

In a June 7, 2006 letter, CIGNA denied Javery's first appeal based on the physical component only of his claim. CIGNA recognized, however, that there was a mental status component to the claim, stating:

> Dr. Hotlzmeier [*sic*] has advised in the letter dated April 21, 2006, that Mr. Javery is unable to lift greater than ten pounds, bend, twist, squat, kneel or crawl; however, these restrictions would not prevent Mr. Javery from performing sedentary work. In addition, Dr. Holtzmeier advised Mr. Javery is unable to concentrate at work beyond periods of time of approximately ½ hour and he needs to take frequent breaks. While these limitations were noted, we have not been provided with mental status examination findings, neuropsychological testing or treatment records supporting a cognitive impairment resulting in restrictions.

(ECF No. 36-2, at 181.) Javery appealed. (ECF No. 36-2, at 179.) After CIGNA informed Javery's former counsel that it would consider "new medical information" on appeal (ECF No. 36-2, at 177), counsel then asked CIGNA in an August 28, 2006 letter "to re-open your decision on Mr. Javery to consider his psychological disabilities" supported by such information (ECF No. 36-2, at 171). In a September 8, 2006 letter, CIGNA responded, stating that "[w]e are in receipt of the additional medical information you submitted" and that "Mr. Javery's complete file, including the additional information you submitted, is being considered during the appeal

review process." (ECF No. 36-2, at 168.) In subsequent September 15, 2006 correspondence regarding Javery's asserted "significant psychological conditions that were previously diagnosed by Dr. Weaver," Javery's former counsel informed CIGNA that Javery "was just admitted to Shepherd Hill Hospital for counseling" and that he would forward the records to CIGNA. (ECF No. 36-2, at 162.) Counsel was again direct in asserting the mental status component of the diability claim, concluding the letter by stating that "[b]ased upon this information and the significant turn in Mr. Javery's psychological status, it would be greatly appreciated if you woulde reverse your determination and grant benefits for Mr. Javery." (*Id.*)

CIGNA responded in a September 29, 2006 letter in which CIGNA apologized for the delay in deciding the claim and stated that "[p]er your letter dated September 15, 2006, we will await additional information from Shepherd Hill Hospital. Once the information is received, we will complete a medical review of the claim." (ECF No. 36-2, at 161.) Additionally, in the final denial letter of January 4, 2007, CIGNA indicated that it had "reviewed [Javery's] claim as requested in your Notice of Appeal" and that it had reviewed the "information previously on file and information submitted for appeal," including the mental condition-oriented information. (ECF No. 36-1, at 76, 77.)

Given this record, there is no doubt that Javery's mental status was at issue as grounds for disability. The Court therefore need not resolve the irrelevant issues of whether Javery sufficiently raised all or part of his mental status grounds in his initial application or whether the plan had a duty to consider these grounds if Javery belatedly asserted them. Once the plan agreed to consider Javery's mental status, as it undoubtedly did, it had a duty to do so properly.

The administrative record fails to indicate, however, that, after agreeing to consider the

11

psychological component of Javery's expanded disability claim, Lucent reached a decision denying this component of the claim as the result of a deliberative, principled reasoning process. Rather, the record fails to reflect *any* reasoning applied to the mental status component. This is problematic for Lucent because this Court "cannot uphold an ERISA plan administrator's determination if it is not the product of 'a deliberate, principled reasoning process.' " *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006) (quoting *Glenn v. Metro Life Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006)).

Having recognized the inadequacy of the findings and reasoning presented by the record, the question is what remedy this Court should apply. In its briefing, Lucent argues that "the record is not sufficiently developed to make an informed decision on the existence of any claimed psychological disability, and the Plan does not know whether the Court has familiarity with the Plan or the medical expertise necessary to make a disability determination in the first instance." (ECF No. 37, at 10-11.) This is a good if incomplete summary of the posture of this case.

The Sixth Circuit has explained that "[i]n cases such as these, courts may either award benefits to the claimant or remand to the plan administrator." *Id.* (citing *Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 265 (6th Cir. 2006) ("[W]e vacate the judgment of the district court and remand this case for entry of an order requiring CCC to conduct a full and fair review of [the] disability claim."), *Glenn*, 461 F.3d at 675, & *Buffonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 31 (1st Cir. 2005) ("There is no question that this court has the power to remand to the claims administrator; it also has the power, in appropriate cases, to award benefits to the disability claimant.")). This Court concludes that the appropriate remedy here is a remand for a

full and fair review of Javery's disability claim that would include his asserted psychological condition or mental confusion stemming from medication.

### C. Merits

The Plan provides:

> The term "Disability" or "Disabled" shall mean, for the one-year period commencing immediately after the 26 weeks of Short Term Disability Benefits have been paid, that the Eligible Employee is prevented by reason of such disability, other than accidental injury arising out of and in the course of employment of the Company, from engaging in his or her occupation or employment at the Company, for which the Eligible Employee is qualified, based on training, education or experience. Thereafter, an Eligible Employee shall continue to be considered as disabled under the Plan if, in the sole opinion of the Claims Administrator, the Eligible Employee is determined to be incapable of performing the requirements of any job for any employer (including non-Lucent Technologies Inc. employment), (as a management or LBA employee ), [*sic*] for which the individual is qualified or may reasonably become qualified by training, education or experience, other than a job that pays less than 60 percent of the Eligible Employee's Eligible Pay that would have been in effect on the day preceding the day that the Eligible Employee's Short Term Disability Benefits ceased.

(ECF No. 36-1, at 5.) As noted above, CIGNA held that Javery did not satisfy this definition in its January 4, 2007 final denial of benefits.

The extant problem presented by the January 4, 2007 denial and the briefing before this Court is that the briefing does not match the denial rationale. In arguing that he falls within the definition of disabled, Javery relies on the medical information regarding his mental status (whether related to any psychological condition or cognitive impairment caused by medication). Such reliance is of little value here, however, given the mental status remand described above. This would leaves for *de novo* consideration any arguments regarding the degenerative disc component of Javery's claim and whether that condition alone suffices to satisfy the definition of

a disability. But Javery's disability claim is not so cut and dry.

This is because Javery's claim below either included from the outset or grew by agreement to encompass his mental status *in conjunction with* his physical condition. Javery's back pain alone could render him disabled, his mental status alone could render him disabled, or his back pain combined with his mental status could render him disabled. Javery linked his purported conditions during his claim, stating even early on that "[m]edications *and* intense back pain prevents [*sic*] me physically *and* mentally to continue performing timely and quality work." (ECF No. 36-4, at 519 (emphasis added).) In his briefing before this Court, Javery continues to argue for joint consideration of his conditions, explaining that he "stated that he could not perform the sophisticated work required because of the combined influence of the pain he was experiencing and the medications he was taking." (ECF No. 34, at 12.) The fact that Javery's claim is predicated in large part on his mental status, whether due to medication or mental illness, prevents this Court from a surgical parsing of his arguments.

In other words, this Court can only conduct a *de novo* merits analysis of the claim following the remand decision, if necessary. The record evidence before this Court does not support that Javery satisfies the Plan definition of being disabled based only upon his back pain. But Javery may be disabled based upon his back pain *and* his mental status *or* based upon his mental status alone. Following a remand decision adverse to Javery, if the decision is in fact adverse to Javery, this Court will proceed to order briefing on an updated administrated record and will conduct a *de novo* review of the final disability decision.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Lucent's motion (ECF No. 33) and

**DENIES** Javery's motion (ECF No. 34).  This Court **REMANDS**  Javery's disability claim for a timely, full, and fair review of whether his asserted psychological condition or mental confusion stemming from medication standing alone or in conjunction with his physical condition entitle him to long-term disability benefits.

In light of the remand, the Court **ADMINISTRATIVELY CLOSES** this action until the claim determination process is complete.  The parties shall contact this Court within one week of the final administrative decision, if Javery seeks to proceed with his case, and the Court will restore this action to the active docket and schedule a status conference.

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE