# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

NILRATAN JAVERY,

        Plaintiff,

        v.

LUCENT TECHNOLOGIES INC.
LONG-TERM DISABILITY PLAN FOR
MANAGEMENT OR LBA EMPLOYEES,

        Defendant.

Case No. 2:09-cv-00008
JUDGE GREGORY L. FROST
Magistrate Judge E.A. Preston Deavers

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's motion for attorneys' fees and non-taxable costs (ECF No. 67), Defendant's memorandum in opposition (ECF No. 74), and Plaintiff's reply memorandum (ECF No. 75). For the reasons that follow, this Court finds the motion well taken.

## I. Background

Plaintiff, Nilratan Javery, previously worked as an employee of Lucent Technologies Inc. from 1998 until May 19, 2005. By virtue of that employment, Plaintiff was covered by Defendant, Lucent Technologies Inc. Long Term Disability Plan for Management or LBA Employees, a welfare benefit plan under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"). Plaintiff unsuccessfully applied for long-term disability benefits under the plan, and after exhausting his appeals, he filed an ERISA claim for benefits under 29 U.S.C. § 1132(a)(1)(B) with this Court. After considering various issues, the Court

remanded in order to afford Plaintiff full and fair review of whether his asserted psychological condition or mental confusion stemming from medication standing alone or in conjunction with his physical condition entitled him to long-term disability benefits. (ECF No. 39, at 15.) On remand, Plaintiff's disability application again met with denial. This Court subsequently reactivated this case, and the parties proceeded to complete briefing on second cross-motions for judgment on the administrative record. These motions led to the Court entering judgment in favor of Defendant. (ECF No. 55.)

Plaintiff appealed. On appeal, the Sixth Circuit disagreed with this Court and held that Plaintiff had established that he was unable to work as a software engineer for the relevant time period involved. (ECF No. 63.) Following issuance of the appellate mandate (ECF No. 65), this Court acted pursuant to the remand instructions and entered judgment in favor of Plaintiff (ECF No. 66). Plaintiff subsequently filed a motion for attorneys' fees and non-taxable costs. (ECF No. 67.) The parties have completed briefing on the motion, which is ripe for disposition.

## II. Discussion

ERISA provides that "a court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In exercising this discretion, a court asks whether the party seeking an award has attained "some success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255, 256 (2010). This inquiry does not demand that the party be a prevailing party. *Id.* at 252, 253. It does, however, require more than trivial success on the merits or a purely procedural victory. *Id.* at 255.

Here, it is beyond dispute that Plaintiff has achieved some success on the merits. Via appeal, Plaintiff has obtained an award of benefits. Although Defendant dismisses the award as

2

"only a modicum of success relative to [Plaintiff's] original claim as a whole," the award is nonetheless more than a trivial degree of success on the merits. (ECF No. 74, at Page ID # 2248.)

Plaintiff's satisfaction of the threshold requirement of presenting some success on the merits leads to consideration of the following five factors that can inform the exercise of this Court's discretion to make an award:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Moon v. Unum Provident Corp.*, 461 F.3d 639, 642 (6th Cir. 2006) (citing *Secretary of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985)). *See also Hardt*, 560 U.S. at 255 n.8. Although § 1132(g)(1) does not require consideration of these factors, they are helpful in the fee award context. *Ciaramitaro v. Unun Life Ins. Co. of Am.*, 521 F. App'x 430, 437 (6th Cir. 2013). Because there is no singularly dispositive factor, however, this Court can and will consider each factor in determining whether an award under § 1132(g)(1) is warranted. *See Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 937 (6th Cir. 1996).

***Degree of Defendant's culpability or bad faith.*** The Court recognizes that Defendant's conduct presents at least a notable degree of culpability. Three comments are necessary in this regard. First, Defendant's position that any fault in the handling of the claim rests on the plan administrator and not on Defendant is unpersuasive. The novel attempt at passing the buck in this manner does not divest Defendant of responsibility in the role it plays in the claim process

3

and in this litigation. Delegation is not absolution; ERISA imposes on Defendant the ultimate responsibility for Plaintiff's disability claim and for this litigation, as well as responsibility for any fee award. To the extent Defendant disagrees, the proper course is to lodge its innocent party excuse with Congress and not with a court charged with acting within the contours of the disability laws that legislative body has passed. Second, the inexplicable reluctance to recognize that Plaintiff's mental status was part of his disability claim prior to the remand by this Court not only tainted the initial disability application process but also unnecessarily enlarged the fees and expenses involved in Plaintiff's pursuit of benefits. This Court may have erroneously found in Defendant's favor, but even before that error occurred the Court found conduct that evinces an important degree of culpability. Third, as Plaintiff correctly notes in his briefing, the court of appeals held that Defendant's treatment of the claim and the election to rely on a file review in the decision making afforded to the claim were often questionable. It is the court of appeals' decision that matters, not this Court's vacated decision. Even if not bad faith, the errors here were therefore hardly honest accidents; the process employed was deliberate and flawed. This factor favors Plaintiff.

*Defendant's ability to satisfy an award of attorney's fees.* Plaintiff asserts in his briefing that the successor-in-interest to Defendant is a large, multi-national corporation that is able to pay the requested award. Defendant in its briefing neither admits nor denies its ability to pay, but simply asserts that the Court should not give this factor undue weight. This Court agrees and gives the factor the limited weight it is due. The factor weighs in favor of Plaintiff but is hardly dispositive. *See Foltice*, 98 F.3d at 937.

*Deterrent effect of an award on other persons under similar circumstances.* The Court

recognizes that the possible deterrent effect of an award is a factor to be considered. Experience and reality teach this Court, however, that any actual deterrent effect in this context is minimal at best. Decision makers are unlikely to know or care of today's award in making future disability determinations, especially when there has not been the type of egregious willful error or bad faith that would generate attention. To overvalue the deterrent effect of the award would be hubris. But the theoretical deterrent effect of an award exists, and Defendant's repeated attempt to puncture any deterrence by pointing to the plan administrator as the only responsible party denies Defendant's role in the process and in this litigation, in addition to ignoring business realities. Defendants who continually incur awards are unlikely to utilize plan administrators whose actions lead to such awards, which can introduce a corrective effect into the practices of the plan administrators. Thus, this factor weighs in favor of Plaintiff, however qualified that weight may be, because there is always hope that an award will carry a deterrent effect. *See Elliot v. Metro. Life Ins. Co.*, No. 04-174-DLB, 2007 WL 1558519, at *3 (E.D. Ky. May 29, 2007) (noting that "even with the inherent deterrent effect that comes with any plaintiff's ruling, there is also something to be said for the heightened deterrent effect resulting from a fee award. Companies would likely take a much closer look at denial decisions, and the presentation of that decision, if forced to take into account the possibility that fees will be awarded upon remand").

*Whether Plaintiff sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA.* Plaintiff concedes that he filed his claim only for his own benefit. Consequently, this factor does not favor an award.

*Relative merits of the parties' positions.* Similar to the majority of the other factors, the

5

parties also disagree about the last factor. In arguing that the merits of his position outweigh the merits of Defendant's position so as to favor the requested award, Plaintiff emphasizes that he prevailed on appeal. Defendant points to the fact that this Court had initially entered judgment against Plaintiff as demonstrating that the merits of the parties' dispute were close. But the fact that this Court got it wrong neither ultimately insulates Defendant from its own conduct nor means that the merits were necessarily close. The court of appeals regarded the merits as far less close than this Court originally did, and that perspective controls.

Defendant also argues that the fact that Plaintiff recovered only a portion of what he sought points to the relative closeness of the overall merits of this full litigation. In his complaint, Plaintiff sought benefits from the date of his application to the date of judgment, along with an order that he continue to receive benefits until he is no longer disabled. (ECF No. 2, at Page ID # 5.) What he recovered was benefits for the period of November 25, 2005 through November 25, 2006, with the remainder of his original request left for a future disability determination to be submitted to the plan administrator. (ECF No. 63, at Page ID # 2148.) But the discrepancy between requested versus actual results does not invariably mean that the substantive merits were close. Rather, it means that the court of appeals (and therefore this Court) recognized the inherent limitation on the appropriate scope of this litigation, even if Plaintiff did not in his initial pleading. This case has always been about the one-year disability period that could serve as a gateway to the question of whether Plaintiff meets the slightly different plan requirements for disability benefits beyond that year. The manner in which Plaintiff litigated the case recognized that, despite the expansive language in the complaint.

Plaintiff contends that the complaint language is technically correct and does not ask for

6

more than he could seek here because "he remains free to move the Court for an order re-activating the case" if he is not satisfied with the subsequent administrative proceedings on additional benefits. (ECF No. 75, at Page ID # 2355.) Without commenting on that contention, the Court recognizes that *it simply does not really matter* for present purposes. The asserted overreach in pleading does not lead to the conclusion that an award is inappropriate. It also does not mean that this fifth factor is balanced between the parties or weighs slightly in favor of Defendant, as Defendant suggests. Even taking into account Defendant's position on the prayer for relief versus the relief actually realized, the Court concludes that this factor supports an award.

Plaintiff's achievement of some success on the merits and consideration of the five factors discussed leads this Court to conclude that a fee award under § 1132(g)(1) is appropriate. The extant questions is thus how much is an appropriate award. Plaintiff asks for a total award of $76,168.01, comprised of $75,377.00 in attorneys' fees and $791.01 in non-taxable costs. In determining whether this request is reasonable, the Court will employ the lodestar approach. *See Ciaramitaro*, 521 F. App'x at 437.

This general approach requires the Court to "first determine the lodestar amount by multiplying the reasonable number of hours billed by a reasonable billing rate. That amount can then be adjusted" based on a twelve-factor test for assisting in the determination of the reasonableness of an application for attorney's fees.[1] *Reed v. Rhodes*, 179 F.3d 453, 471-72 n.3

---

[1] Although the relied-upon *Johnson* case has been abrogated, its twelve-factor test remains good law. *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) ("*Johnson*'s 'list of 12' thus provides a useful catalog of the many factors to be considered in assessing the reasonableness of an award of attorney's fees").

7

(6th Cir. 1999) (adopting factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). *Cf. Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006) ("Multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the community for such work, we use the lodestar method to calculate an appropriate attorney's fee award . . . ."); *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir. 2004) ("Attorney's fees must be set in amount that is 'reasonable,' . . . and in recent times the starting point has been a 'lodestar' calculation–the product of the number of hours reasonably spent on the case by an attorney times a reasonable hourly rate.").

These factors include:

(1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id*. at 472. There is a "strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

Guided by the foregoing analytic framework, the Court has first calculated the lodestar amount. Although the United States Supreme Court has recognized that oftentimes the traditional twelve factors "are usually subsumed with the initial calculation of hours reasonably expended at a reasonable hourly rate," the Court has then addressed the relevant factors after the lodestar analysis. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983).

In conducting its analysis, the Court has remained mindful of the fact that the Sixth

Circuit has recognized that one issue that often arises regarding the reasonableness of hours billed is "whether the lawyer . . . unnecessarily duplicat[ed] the work of co-counsel." *Coulter v. State of Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986). The appellate court has held that a district court has the discretion to make a simple across-the-board reduction, by a certain percentage, in order to account for duplicative hours. *Hudson v. Reno*, 130 F.3d 1193, 1209 (6th Cir. 1997), *overruled on other grounds*, *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001). The absence of co-counsel here moots much of this concern, but the Court has still considered whether the work of counsel and his paralegal present concerns of unnecessary duplication of work.

This Court has also considered the amount involved and the results obtained. Indeed, according to *Hensley*, the single most important factor regarding the reasonableness of fees is the result that is obtained. 461 U.S. at 434-36. Under *Hensley*, if counsel obtained excellent results, the Court should award the full fee request. *Id.* at 435. In contrast, partial victory cases occur "where plaintiff is deemed prevailing even though he succeeded on only some of his claims for relief." *Id.* at 439. In partial victory situations, the Court may but is not required to reduce a fee award. *Id.* "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* Stated simply, a party who partially prevails is entitled to an award of attorneys' fees commensurate to that party's success. *Krichinsky v. Knox County Sch.*, 963 F.2d 847, 850 (6th Cir. 1992). In this ERISA context, the Court considers Plaintiff's achieving but one year of a disability award as informing the overall award, while at the same time remaining mindful that Plaintiff has consequently obtained through this award the ability to pursue benefits beyond the necessarily limited time period.

Plaintiff has the burden of "documenting the number of hours spent on the case and of maintaining records in a way that would allow a court to determine how much time was spent on each claim." *Moore*, 355 F.3d at 566. In discussing the amount of detail necessary in documentation submitted to a court, the Sixth Circuit has held that "the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate, Tile and Composition Roofers v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 502 n.2. (6th Cir. 1984). The Court may reduce the award when the submitted documentation is inadequate. *Reed*, 179 F.3d at 472.

The Court has reviewed the billing entries provided to discern whether they contain sufficient detail, when read in context, to enable the Court to determine that the time was reasonably spent in pursuit of necessary and relevant interests. In conducting such a review, the Court has been mindful that although many of the entries do not state in much detail the substance of many entries, such detail would likely–as in most cases–be protected by the work product doctrine or the attorney-client privilege. Thus, the Court has endeavored to balance careful scrutiny of the billing statements with Plaintiff's right to avoid disclosure of matters that are not the Court's business. In reviewing the submitted billing statements, the Court is neither in the business of nor interested in second-guessing or micro-managing the business practices of Plaintiff's counsel.

Sufficient detail matters, however. In *Black v. Lojac Enterprises, Inc.*, 117 F.3d 1420, 1997 WL 377051 (6th Cir. 1997) (unpublished table decision), the Sixth Circuit addressed a case in which the trial court had subtracted time from a plaintiff's request because the submitted time

10

entries were vague. *Id.* at *2. The appellate court affirmed the district court's decision, stating that "many of the time entries failed to even identify the general subject matter involved, documented with such vague descriptions as 'research,' 'pick-up,' 'revised form,' and 'office conference.' . . . Thus, such entries clearly provide little guidance in ascertaining the purpose of the work during the time claimed and do not merit an award." *Id.* at *3.

Plaintiff has provided this Court with evidence supporting a rate for counsel of $350.00 per hour for 90.6 billable hours from the beginning of this litigation through June 30, 2011; a rate of $365.00 per hour for 43.3 billable hours from July 1, 2011 through December 31, 2012; and a rate of $375.00 per hour for 69.6 billable hours from January 1, 2013 to the present. At first blush, the hours expended may seem excessive. Context informs the time and labor required by this case, however, and that context teaches that the course of this litigation has been more time-consuming and labor-intensive than the typical disability case.

The history of this litigation therefore does not suggest any time limitations imposed by the client or the circumstances, but instead indicates that circumstances spread this litigation across seven years. Plaintiff began litigating his disability claim in federal court in 2007, and his efforts have involved a subsequent stipulated dismissal of the original filing, the 2009 re-filing of the case, a 2011 administrative remand, a 2012 return to this Court, a 2012 appeal and cross-appeal to the Sixth Circuit, and a 2014 remand to this Court. Notably, the requested award accounts for work done in the initial case and then repeated in the re-filed case; there has been no apparent double-billing for this work. The hours requested are reasonable in light of the essentially seven-year history of the case and the work involved, and there does not appear to be any unnecessary or duplication of work. Additionally, the nature and atypical length of the

11

professional relationship with the client supports the award.

To the extent that some of the work is tied to the overreach discussed above, the Court recognizes that such work would have a negligible impact on the overall hours billed. The rationale for the disability claim and the errors surrounding the decision making surrounding that claim remain the same for all practical purposes regardless of for how Plaintiff sought to procure benefits. This Court recognizes no need to reduce the lodestar based on the inconsequential overreach, much less to the 6% of the amount requested as Defendant urges. It is important to note that although the amount recovered seems out of line with the award now requested, the one-year of disability recovery also opens the door to pursuit of a substantially larger disability benefit amount. The results obtained therefore exceed a mere one year of disability.

Given the court of appeal's analysis, there is arguably no novelty and limited difficulty involved in the questions presented by this litigation. The court of appeals saw this case differently than this Court, but consistent with Plaintiff's straightforward approach. The novelty and difficulty factor has little impact on this Court's reasonableness determination.

Counsel's hourly rates are also reasonable. ERISA disability law is a niche practice that requires a fundamental level of skill for rendering legal services properly. This Court recognizes that Plaintiff's counsel is one of the preeminent local practitioners in the area of ERISA disability law with two-and-half decades of experience. He therefore has the experience, reputation, and ability to support the hourly rates submitted. Although Defendant disputes this contention, pointing in a perhaps unintentionally condescending manner to the fact that Plaintiff's counsel maintains a one-attorney office located outside downtown Columbus, these points are inconsequential. As Plaintiff aptly notes in his briefing, although "it is true that

Plaintiff's counsel does not work for a big firm with a big office in a big city, it is not correct to assume that Plaintiff's counsel is not experienced or skilled in his chosen area of practice." (ECF No. 75, at Page ID # 2356.) Moreover, as Plaintiff notes, other courts have made awards involving these hourly rates. These rates are do not exceed customary fees despite the fact that counsel's office may be twenty or so minutes from downtown.

The remaining factors are largely of little effect in today's reasonableness determination. The briefing leaves largely unaddressed issues such as whether counsel's fee is fixed or contingent or any preclusion of employment by Plaintiff's counsel due to counsel's acceptance of this case. There is also no apparent basis to regard this case as undesirable.

This leaves for discussion two as yet unaddressed components of the award request. The request also includes 14.1 hours of paralegal work billed at the rate of $125.00 per hour, for a total amount of $1,762.50. Defendant does not target this component of the award request specifically, but it falls within Defendant's general argument that Plaintiff has only obtained a 6% success rate in this litigation. This Court has already rejected the flawed reasoning underlying that argument and concludes that the paralegal work billed is reasonable. The rate charged is fairly typical in this Court's experience and the hours billed are appropriate.

Finally, Plaintiff requests $791.01 in non-taxable costs. There is no evidence undercutting Plaintiffs' contention that these costs were reasonably and necessarily incurred during the course of this litigation, and Defendant also does not target the costs in its memorandum in opposition except to the extent they could be said to fall within Defendant's general 6% success argument. Although the evidence submitted in support of the costs is wholly generic–it is just a list, with the bulk of the non-taxable costs falling under the category of

"Travel"–the Court does not find the sum requested inordinate. This Court finds the non-taxable costs requested to be reasonable.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for attorneys' fees and non-taxable costs and **AWARDS** Plaintiff $76,168.01. (ECF No. 67.)

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE